UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EYDIE GLASSTETTER,**

        **Plaintiff,**

v.

        **Case No. 2:07-cv-125**
        **JUDGE SMITH**
        **Magistrate Judge King**

**REHABILITATION SERVICES COMMISSION,** *et al.***,**

        **Defendants.**

## OPINION AND ORDER

Plaintiff Eydie Glasstetter ("Plaintiff"), a Caucasian female, brings this employment action against Defendants Rehabilitation Services Commission, John M. Connelly, and Katherine A. Brown ("Defendants"), under Title VII, 42 U.S.C. § 2000e-5. Plaintiff alleges she was discriminated against and eventually terminated on account of her race and in retaliation for engaging in protected activities. Plaintiff also asserts claims under 42 U.S.C. § 1983 for denial of equal protection and due process, as well as supplemental state law claims under O.R.C. § 4112.02. Finally, Plaintiff also seeks a writ of mandamus. Defendants have filed a partial motion for judgment on the pleadings, addressing both jurisdictional issues and issues of qualified immunity (Doc. 7). In addition, Plaintiff has filed a motion for partial summary judgment on her procedural due process claim (Doc. 18). Defendants responded with a cross-motion for partial summary judgment (Doc. 22). Finally, Plaintiff has not responded to Defendants' cross motion for partial summary judgment, but instead has filed a motion to defer briefing and ruling on the parties' cross motions for summary judgment (Doc. 26).

For the reasons that follow, the Court **GRANTS** Defendants' partial motion for judgment on the pleadings (Doc. 7), **DENIES as moot** Plaintiff's motion for partial summary judgment (Doc. 18), **DENIES as moot** Defendants' cross-motion for partial summary judgment (Doc. 22), and **DENIES as moot** Plaintiff's motion to defer briefing and ruling on the parties' cross motions for summary judgment (Doc. 26).

## I.   FACTUAL BACKGROUND

Plaintiff Eydie Glasstetter began her employment with the state of Ohio on January 6, 1992.  She served as a Human Resource Administrator ("HRA") 2, then as a HRA 3, for the Department of Commerce ("ODC").  On October 10, 1998, Plaintiff transferred to Defendant, Rehabilitation Services Commission ("RSC") and served in the position of HRA 3 until she was terminated effective August 21, 2006.   As HRA 3, Plaintiff was responsible to "give advice concerning, and to enforce at RSC, the civil service laws, rules and its policies and the RSC affirmative action plan and EEO requirements." (Compl. ¶ 14).

Defendant John Connelly is the administrator of RSC and the appointing authority for all employees of RSC.  The RSC HRA 3 position was described as "classified" when posted. Plaintiff alleges that throughout her employment with Defendant RSC, she was and remained a classified civil service employee. (Compl. ¶ 13).  Defendants argue that Plaintiff's allegation that she was in the classified civil service is a legal conclusion, and "absent a waiver of classified status, whether an employee is 'in' the classified service, or a 'fiduciary' made unclassified under O.R.C. § 124.11(A)(9), is determined exclusively by his or her duties, not by the employer's designation of his or her status." (Defs.' Mot. for Jdt. on Pldgs. at 1; Reply at 1).

On April 3, 2006, Connelly told Plaintiff that he wanted to "unclassify" Plaintiff's job. Defendants Brown and Connelly informed Plaintiff that they wanted "consistency" in RSC and for that reason it was necessary to change Plaintiff's civil service status from classified to unclassified. (Compl. ¶ 20).  Defendants Brown and Connelly told Plaintiff that their request was not the result of a performance issue. (Compl. ¶ 22).  Plaintiff objected stating that the requested change was contrary to established RSC policy and practice. (Compl. ¶ 23).  Plaintiff complained that RSC's African-American female Counsel, Darla Burns, was not asked to change her classification. (Compl. ¶ 24).

Defendant Connelly stated that he was offering Plaintiff a choice.  She could either remain classified, and then the individual Defendants would hire another employee over her with the same classification and duties, and Plaintiff would report to the new hire; or, Plaintiff could agree to become unclassified, and in that event they would not take the described action. (Compl. ¶ 25).  Plaintiff stated that she would "go unclassified because it was not a risk." (Compl. ¶ 27). Defendant Connelly responded "that's right because you have fallback rights." (Compl. ¶ 29).  When Plaintiff questioned Defendant Brown as to why Darla Burns was not changing her classification, Defendant Brown responded that "Burns does not work for me." (Compl. ¶ ¶ 31-32).  Defendant Brown also stated to Plaintiff that Defendant Connelly "should be able to hire his own HR person," and that he could restructure RSC as he desired.  He further stated "It was ridiculous that you are not unclassified because your supervisor is someone who is unclassified." (Compl. ¶ 40).  Plaintiff refused to change her classification unless the order was put in writing. (Compl. ¶ 44).  The next day, Plaintiff received an order in writing from Defendant Connelly. (Compl. ¶ 46).

In May 2006, Defendant Brown "altered Plaintiff's terms and conditions of employment" in an unspecified way, which was "partially reversed" on June 2, 2006, and completely reversed on July 5, 2006. Plaintiff claims these unidentified alterations were "disruptive" and caused other staff to complain about her, which in turn allegedly contributed to her eventual discharge. (Compl. ¶¶ 51-52, 66, 68).

Plaintiff, after learning she was the "target of a disciplinary investigation," told Defendant Connelly that she was exercising her "fallback or restoration rights." (Compl. ¶¶ 56-57). Defendant Connelly then informed Plaintiff that she did not have fallback rights and that her request was denied because Plaintiff had not been "appoint[ed]" from a "certified position in the classified service within that agency," and no "appointment" had occurred "pursuant to this division." (Compl. ¶ 58, Compl. Ex. 6).

On August 15, 2006, Plaintiff was placed on administrative leave, and on August 21, 2006, she was terminated. (Compl. ¶ 62). Plaintiff appealed her termination to the State Personnel Board of Review ("SPBR"), asserting that she was a classified employee at the time of her discharge. (Compl. ¶ 74). Defendants moved to dismiss her appeal, claiming that Plaintiff is an unclassified employee. (Compl. ¶ 75). The SPBR stayed the appeal "in order to allow the parties to pursue resolution of the fall-back rights question through a mandamus action . . . ." (Pl.'s Memo. in Opp., Exibit 1, SPBR Procedural Order, Doc. 11-2).

On February 20, 2007, Plaintiff filed her Complaint in the instant action (Doc. 2-2). In her Complaint, Plaintiff claims that Defendants violated the Due Process Clause of the Fourteenth Amendment as actionable through 42 U.S.C. § 1983 by depriving her of the following property interests: (1) her classified status and tenure as a classified employee; (2) her vested statutory rights under O.R.C. § 124.11(D) to fall back to her classified status and

classified position; and (3) her job with RSC and her appeal rights to the SPBR. (Compl. ¶¶ 68, 73, 88). Additionally, the Complaint alleges that Defendants discriminated against Plaintiff because of her Caucasian race in violation of Title VII and the Equal Protection Clause as actionable through 42 U.S.C. § 1983 by: (1) designating Plaintiff's employment status as unclassified, when the status of a "similarly situated" African-American, General Counsel Darla Burns, was designated as classified (Compl. ¶¶ 78-79, 87); and (2) changing the terms and conditions of Plaintiff's employment in some unspecified way, which caused staff to complain, which in turn led to her discharge. (Compl. ¶¶ 51-52, 66, 68). Finally, Plaintiff asserts that Defendants violated Title VII by discharging Plaintiff in retaliation for her complaints of race discrimination and Ohio law violations. (Compl. ¶¶ 63-65, 67, 80).

On May 29, 2007, Defendants moved for partial judgment on the pleadings on Plaintiff's due process claims, arguing that they were entitled to judgment on all of Plaintiff's procedural due process claims, or, at the very least, the individual Defendants were entitled to qualified immunity (Doc. 7). Defendants' partial motion for judgment on the pleadings does not challenge any of the Title VII claims. This motion has been fully briefed and is ripe for review.

On November 13, 2007, before any formal discovery had been conducted, Plaintiff filed a motion for partial summary judgment on her procedural due process claim, arguing that the RSC violated her pre- and post-termination procedural due process rights (Doc. 18). On December 13, 2007, Defendants responded by filing a cross-motion for partial summary judgment on Plaintiff's procedural due process claims (Doc. 22).

In addition, Plaintiff has filed a motion for partial summary judgment on her procedural due process claim (Doc. 18). Defendants responded with a cross-motion for partial summary judgment (Doc. 22). Finally, Plaintiff has not responded to Defendants' cross motion for partial summary judgment, but instead has filed a motion to defer briefing and ruling on the parties' cross motions for summary judgment (Doc. 26). Plaintiff seeks to defer briefing in order to conduct further discovery.

For the reasons set forth in the Discussion Section, the Court finds that the Defendants' partial motion for judgment on the pleadings is meritorious. The Court's disposition of the partial motion for judgment on the pleadings renders moot the other pending motions. Consequently, those motions—Plaintiff's motion for partial summary judgment (Doc. 18), Defendants' cross motion for partial summary judgment (Doc. 22), and Plaintiff's motion to defer briefing (Doc. 26)—are denied as moot.

## II. RULE 12(c) JUDGMENT ON THE PLEADINGS STANDARD

Federal Rule of Civil Procedure 12(c) provides that "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." It is well settled that a court must review a Rule 12(c) motion under the same standard applicable to a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Under the United States Supreme Court's recent articulation of the standard, courts must construe the complaint in favor of Plaintiff, accept the factual allegations contained in the amended complaint as true, and determine whether Plaintiff's factual allegations plausibly suggest viable claims. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). The claims must be plausible and not merely conceivable. *Bell Atlantic Corp.*, 127 S. Ct. at 1974.

The purpose of a motion under either rule is to test the sufficiency of the complaint. A complaint need not set down in detail all the particulars of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Nonetheless, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). A court must not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Id.* A court will, however, indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

Courts should grant motions for judgment on the pleadings when there is an absence of law or facts to support a claim. Courts may also grant motions for judgment on the pleadings when, on the face of the complaint, there is an insurmountable bar to relief. *Little v. UNUM Provident Corp.*, 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (*citing Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)).

### III. DISCUSSION

Defendants argue that they are entitled to judgment on the pleadings in their favor on Plaintiff's § 1983 due process claim because Plaintiff has failed to prove the existence of a property interest or the inadequacy of state remedies. (Defs.' Mot. for Jdt. on Pldgs. at 5, 10-11). Further, Defendants maintain that, at a minimum, the individual Defendants are entitled to qualified immunity. (*Id.* at 4). Plaintiff counters that she was deprived of at least three property interests without either a pre or post- deprivation due process hearing. (Pl.'s Memo. in Opp. to Defs.' Mot. for Jdt. on Pldgs. at 11). First, Plaintiff claims she was deprived of her classified status when she was coerced into becoming unclassified. (*Id.*). Second, Plaintiff claims she was

deprived of her fallback rights in violation of clearly established law. (*Id*.). Third, Plaintiff asserts she was deprived of her rights in O.R.C. §§ 124.34 and 124.11(D)—her rights to employment and appeal rights—when Defendant Connelly discharged Plaintiff without just cause and without using the procedures set forth in O.R.C. § 124.34(B). (*Id*.).

Plaintiff has also alleged a retaliation claim under § 1983. Because the Equal Protection Clause has no anti-retaliation provision, and because Plaintiff has failed to identify another independent federal source of rights to be free from retaliation except for Title VII, Plaintiff's § 1983 retaliation claim must be dismissed. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 794-95 (6th Cir. 2000); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204-05 (6th Cir. 1984); *Russell v. Drabik*, 24 Fed. Appx. 408 (6th Cir. 2001).

42 U.S.C. § 1983 accords a remedy against "any person" who, under color of state law, deprives another of rights protected by the United States Constitution:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Fourteenth Amendment requires states to afford due process before taking a person's property.[1] State law defines property interests. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

To state a viable procedural due process claim, a plaintiff must prove both the existence of a property interest and the inadequacy of state remedies. *See, e.g.*, *Loudermill*, 470 U.S. at

---

[1] "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. 14th Amen. § 1.

-8-

538, 542-43; *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004). The Sixth Circuit, in *Collyer v. Darling*, 98 F.3d 211, 223 (6th Cir. 1996) *cert. denied.,* 520 U.S. 1267(1997) noted:

> In *Parratt v. Taylor*, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), the Supreme Court held that when an individual is deprived of a property interest by the state due to the unauthorized failure of the state's agents to follow state procedure, due process is satisfied if the person had access to meaningful postdeprivation process. The Court extended *Parratt's* holding to deprivations of due process resulting from intentional but unauthorized acts of state employees in *Hudson v. Palmer*, 468 U.S. 517, 532-33, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). However, to pursue a § 1983 claim, the plaintiff bears the burden of demonstrating that the available state procedures were inadequate to compensate for the alleged unconstitutional deprivation. See Parratt v. Taylor, 451 U.S. at 543, 101 S.Ct. at 1917; *Sutton v. Cleveland Board of Education*, 958 F.2d 1339, 1349 (6th Cir. 1992).

Examining each of Plaintiff's claimed property interests in turn, the Court finds that Plaintiff has not met her burden to maintain a viable procedural due process claim.

**A.   Alleged Deprivation of Classified Designation**

Plaintiff contends that she was deprived of her property interest in her classified status when Defendant Connelly "coerced [P]laintiff to become unclassified and ordered her to prepare the documents to accomplish this task." (Pl.'s Memo. in Opp. to Defs.' Mot. for Jdt. on Pldgs. at 11). Plaintiff asserts that her property interest in her classified status is recognized by "Ohio law." (*Id.*). Plaintiff does not identify what "Ohio law" she relies on. Plaintiff further maintains that Defendants' "failure to give [P]laintiff a pretermination opportunity to be heard before she was initially coerced into unclassifying herself . . . failed to afford [P]laintiff the process that was due to her under the federal constitution." (*Id*. at 13).

Defendants argue that there was not an actual change in Plaintiff's status because her duties did not change. (Defs.' Reply at 4). Instead, Defendants point out that the change was

only in the designation of her position as "classified." (*Id.*). Defendants then rely on *Treciak v. State of Ohio*, 117 F.3d 1421, *1 (6th Cir. 1997) for the proposition that an employee such as Plaintiff has no property interest in the designation of their position as classified. (*Id.* at 9-10).

O.R.C. § 124.11 divides Ohio public employment into the classified and unclassified service. Plaintiff correctly points out that classified employees in the State of Ohio have State-created property interest in their continued employment which due process protects. *Loudermill* 470 U.S. at 538-39; *Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir. 1995); *Collyer v. Darling*, 98 F.3d 211, 223 (6th Cir.1996); O.R.C. § 124.34 (provides that a "classified" civil servant cannot be removed except for cause). Unclassified State employees, in contrast, are employed essentially at will. *See Christophel*, 61 F.3d at 482. Unlike classified employees, unclassified employees have no property right to continued employment. *Id.* (*citing Vodila v. Clelland*, 836 F.3d 231, 232 (6th Cir 1987)).

Whether an employee is unclassified pursuant to O.R.C. § 124.11(A)(9) is determined by the employee's actual job duties, not by the employer's designation of the employee's status. In *Yarosh v. Becane*, 63 Ohio St.2d 5, 406 N.E.2d 1355 (1980), the Ohio Supreme Court held at ¶ 2 of the syllabus:

> 2.  The State Personnel Board of Review has jurisdiction over appeals from removals of public employees if it determines that such employees are in the classified service, *regardless of how they have been designated by their appointing authorities*.

(Emphasis added). The *Yarosh* Court explained that whether an employee is exempt because of a "fiduciary" or "administrative" relationship is determined by the employee's actual job duties rather than by the designation given to them by their appointing authorities. Thus, classification status is determined by the statutory definition contained at O.R.C. § 124.11(A)(9), and not how

the parties list or designate the position. As Defendants point out, to find otherwise could result in tenure being irrevocably awarded to personal or political favorites by the mere act of designating a high-ranking fiduciary or policy-making position as "classified."

In the instant case, Plaintiff was ordered to change her designation from classified to unclassified in order to correct the listed status. Her duties, however, remained the same before and after the re-designation. Therefore, Plaintiff was either legally in the classified service both before and after her status re-designation, or legally in the unclassified service both before and after the status re-designation. The only change, then, was in Plaintiff's designation. As set forth above, Plaintiff contends she had a property right in the designation of her position.

In *Treciak v. State of Ohio*, 117 F.3d 1421, *1 (6th Cir. 1997), the Sixth Circuit was asked to consider the same issue now before this Court—whether "the State created a property interest in continued classified service, and as such, guaranteed Plaintiffs notice and a hearing before correcting their status from classified to unclassified." In *Treciak*, the positions of two highly-placed employees, designated as "classified" at the end of the Celeste Administration, were re-designated as "unclassified" by the incoming Voinovich Administration. The *Treciak* plaintiffs claimed that the re-designation of their status, without the benefit of a pre-deprivation hearing, violated their due process rights. The Sixth Circuit held the defendants were entitled to qualified immunity, which was as far as the Court had to go to resolve the *Treciak* plaintiffs' claim. Examining the existing case law, the *Treciak* Court indicated that case law does not support the conclusion that the plaintiffs had property rights in the continued classified service:

> Not only is there no case law to support Plaintiffs' position, but the precedent that does exist supports the conclusion that Plaintiffs do not have a property interest in continued classified service. See *Esselburne v. Ohio Dep't of Agric.*, 504 N.E.2d 434, 443 (Ohio Ct.App.1985) (noting that a classified position may be changed to an unclassified position if it had been erroneously listed as classified under

> O.R.C. 124.11(A)(9)); *Shearer v. Cuyahoga County Hosp.*, 516 N.E.2d 1287, 1288 (Ohio Ct.App.1986) ("*Loudermill* does not stand for the proposition that the appellant has a property right in continued status as a classified civil servant...."); *Lawrence v. Edwin Shaw Hosp.*, 517 N.E.2d 984, 989 (Ohio Ct.App.1986) ("There is no language to be found in R.C. 124.11 which would support the contention that appellants had a vested right to a perpetual status as classified civil service employees."). Moreover, the Supreme Court recently had the opportunity to expand the coverage of *Loudermill* protections and expressly refused to do so. *Gilbert v. Homar*, 520 U.S. 924 (1997) (holding that a tenured public employee in a position of trust who is charged with a felony has no due process right to a hearing before being suspended without pay).

*Treciak*, 117 F.3d 1421, at *2, n.2.

This Court agrees with *Treciak*, and the cases relied upon by *Treciak*, which indicate there is no property right in the designation of a position as classified. This conclusion is consistent with Ohio civil service law, which provides that a designation of "classified" or "unclassified" status is merely informational. Accordingly, Plaintiff has failed to state a procedural due process claim with respect to her allegations that she was "coerced" into becoming unclassified.

**B.     Alleged Deprivation of Fallback Rights**

Plaintiff argues she was deprived of a property interest when she "exercised her fallback rights and [Defendant] Connelly, in violation of clearly established law, refused to honor her fallback rights." (Pl.'s Memo. in Opp. to Defs.' Mot. for Jdt. on Pldgs. at 11). Plaintiff explains that Defendant Connelly's refusal divested Plaintiff "of the 'vested' rights specified in R.C. 124.11(D) to resume her classified status and position. (*Id.*).

Defendant counters that Plaintiff "has no 'property right' in her 'fallback rights' because the 'fallback' statute, by its very terms, did not apply to her HRA 3 position." (Defs.' Mot. for Jdt. on Pldgs. at 10).

At the time Glasstetter's claims arose, O.R.C. § 124.11(D) provided, in relevant part:

> An appointing authority … may *appoint* a person who holds a certified position in the classified service *within the appointing authority's agency to a position* in the unclassified service *within that agency*. A person *appointed pursuant to this division to a position in the unclassified service* shall retain the right to resume the position and status held by the person in the classified service immediately prior to the person's appointment to the position in the unclassified service, regardless of the number of positions the person held in the unclassified service.

(Emphasis added).

O.A.C. § 124-1-02(E) defines "appointment" as "placement of an employee in a position."[2] 16 O.A.C. §§ 123:1-47-01(A)(62), and 124-1-02(S) defines "position" as "a group of duties intended to be performed by an employee."

In the instant case, Plaintiff does not allege that she was ever "appointed" to any "position" other than her original position of Human Resource Administrator 3 ("HRA 3 ") when she arrived at Ohio Rehabilitation Services Commission ("RSC"). Instead, she alleges in her Complaint that she transferred to RSC where she remained in the same "position" as HRA 3 from October 10, 1998, until she was terminated effective August 21, 2006. (Compl. ¶ 2).

Plaintiff alleges she was ordered to re-designate the status of her same HRA 3 position from "classified" to "unclassified." This is different from an "appointment" "to a position" under O.R.C. § 124.11(D). The use of the word "reinstatement" in the statute further supports the implication that the position occupied and the position "fallen back" to must be separate and distinct. "Reinstatement" means "the act of returning a person to the same appointing authority . . . following a *period of separation* or a leave of absence, retaining seniority and status." O.A.C. § 123:1-47-01(A)(76) (emphasis added). Plaintiff was never "separated" from her HRA 3

---

[2] O.R.C. § 124.01(D) defines "appointing authority" as the person "having the power of appointment to, or removal from, positions." "Appointment," therefore, is the act of assigning an employee to a discrete "position." See also, O.R.C. § 124.27 and O.A.C. Chapter 123:1-17, describing the methods of "appointment" to fill a "position."

position, by promotion or otherwise, until she was discharged. Thus, there was no position for her to "fall back" to, other than the one she already occupied.

Because the "fallback" statute applies only to an "appointment" from one position to another within the *same* agency, events before Plaintiff arrived at RSC are irrelevant. Moreover, when Plaintiff was appointed to her HRA 3 position, O.R.C. § 124.11(D) was not yet in effect—there was no such division within O.R.C. § 124.11. Therefore, Plaintiff could not have been "appointed" to her RSC position "pursuant to this division" as is required to have "fallback" rights.

Plaintiff's contentions are also flawed from a practical perspective. If, as Plaintiff contends, "fallback rights" applied not only to an "appointment" to a different position, but also to a status re-designation of the same position, the effect would be to make any erroneous designation as "classified" a permanent and binding one. Once an employee's status was described as "classified," a public employer could never effectively "correct" the mis-designation, because an employee could always "fall back" to a classified status in the very same position the employee had always occupied. An outgoing administration could hamstring the incoming one simply by designating all its political appointees as "classified." When the incoming administration attempted to replace them, the appointees could claim to "fall back" to classified status in the very same high-ranking policy-making jobs they had occupied moments before.

Plaintiff also argues that Defendant Connelly's alleged comment, indicating that Plaintiff had "fallback rights," creates a property interest. (Pl.'s Memo. in Opp. to Defs.' Mot. for Jdt. on Pldgs. at 12, 16).[3]

This argument also fails. As Plaintiff concedes, "[p]ublic employees hold their positions ex lege." (Pl.'s Memo. in Opp. to Defs.' Mot. for Jdt. on Pldgs. at 10 (*citing Estabrook v. City of Dayton*, 1997 WL 1764764, *5 (S.D. Ohio 1997)). *See also*, *Fuldauer v. City of Cleveland*, 32 Ohio St.2d 114 (1973); *State ex rel. Gordon v. Barthalow*, 150 Ohio St. 499 (1948); and *Cook v. Maxwell*, 57 Ohio App.3d 131, 134 (Hamilton 1989), for the proposition that Ohio civil servants are "employed as a matter of law and not as a matter of contract." Not only is Plaintiff's argument inconsistent with this principle, but it too is flawed from a practical perspective. If Defendant Connelly could give Plaintiff "fallback rights" simply by acknowledging that they existed, then an outgoing administration could do the same, preventing the newly elected administration from replacing even the highest-ranking political appointees.

Plaintiff, in her Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings, repeatedly seeks to rely on the Ohio Supreme Court's decision in *State ex rel. Asti v. Dep't of Youth Servs.*, 107 Ohio St.3d 262 (2005). (Pl.'s Memo. in Opp. to Defs.' Mot. for Jdt. on Pldgs. at 2, 6-8, 12, 16-17). Plaintiff's reliance is misplaced. The issue in *Asti* was not who has "fallback" rights, but rather when they can be exercised. The *Asti* plaintiff sought to "fall back" to his prior classified position after accepting multiple, successive unclassified positions. *Id.* at 266. The Supreme Court held that, in the absence of any clear statutory limitation on when

---

[3]Plaintiff also relies on Ex. 3 to the Complaint as such an "admission." (Pl.'s Memo. in Opp. to Defs.' Mot. for Jdt. on Pldgs. at 7). The acknowledgment form simply states that Plaintiff "*may* be entitled to 'fall-back' rights," not that she does have them.

-15-

the employee could demand to "fall back," an employee who had fallback rights could exercise their right to begin his previous classified position again, and that right was "not restricted to any particular time or event."[4] *Id.* Thus, *Asti* is inapplicable to the instant case because as this Court has explained, Plaintiff had no fallback rights to begin with.

Plaintiff also seeks to rely on *Leibson v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 84 Ohio App.3d 751 (1992). Again, Plaintiff's reliance is misplaced. That case involved a predecessor statute applicable only to the Ohio Department of Mental Retardation and Developmental Disabilities, O.R.C. § 5123.08, that was otherwise similar to O.R.C. § 124.11(D). The *Leibson* plaintiff was promoted from one classified position to another, separate, unclassified position, Health Administrator 2. After several re-assignments, the *Leibson* Plaintiff's HA 2 position was to be abolished, but his demand for a fallback position was ignored. *Id.* at 754-56. In the instant case, Defendants admit that if Plaintiff had been promoted or otherwise "appointed" from a "classified" position to an unclassified position, she would have had the right to "fall back" to the prior, separate and distinct position she had previously occupied. But Plaintiff never moved from one position to another, and there was no separate, previously-occupied position to which Plaintiff could "fall back." Consequently, as this Court has previously explained, Plaintiff had no fallback rights.

---

[4] Shortly after *Asti* was decided, the General Assembly amended O.R.C. § 124.11(D) to correct the unworkable and unintended result, although the amendment had not taken effect when Plaintiff was discharged. The amended statute inserts a sentence providing, "An employee's right to resume a position in the classified service may only be exercised when an appointing authority demotes the employee to a pay range lower than the employee's current pay range or revokes the employee's appointment to the unclassified service," and clarifies how fallback rights operate when an employee is discharged for cause.

-16-

Accordingly, Plaintiff has failed to state a procedural due process claim with respect to her allegations that Defendant Connelly refused to honor her "fallback rights."

### C. Alleged Deprivation of Rights to Employment and Appeal Rights

Plaintiff asserts she was deprived of her rights to employment and appeal rights when Defendant Connelly discharged her without just cause and without using the procedures set forth in O.R.C. § 124.34(B). (Pl.'s Memo. in Opp. to Defs.' Mot. for Jdt. on Pldgs. at 11). Defendants dispute that Plaintiff had a property interest in her continued employment. (Defs.'Reply at 16-17, n.13). Moreover, Defendants argue that even if Glasstetter had property rights in continued employment in her HRA 3 position, Ohio provided adequate due process. (*Id*. at 14). Finally, Defendants contend that Plaintiff suffered no deprivation of any property rights in an appeal. (*Id*. at 17).

#### 1. Alleged Deprivation of Rights to Employment

As set forth above, to state a viable procedural due process claim, a plaintiff must prove both the existence of a property interest and the inadequacy of state remedies. *See, e.g.*, *Loudermill*, 470 U.S. at 538, 542-43; *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004). And, it is undisputed that classified employees in the State of Ohio have State-created property interest in their continued employment which due process protects. *Loudermill* 470 U.S. at 538-39; *Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir. 1995); *Collyer v. Darling*, 98 F.3d 211, 223 (6th Cir.1996); O.R.C. § 124.34. In *Loudermill*, the Supreme Court held that a classified civil service with tenure rights was entitled to (1) notice of the "charges" against her, (2) an explanation of the employer's evidence, and (3) an opportunity to respond before being removed for disciplinary reasons. 470 U.S. at 546. All that was required was notice of the proposed action and "[t]he opportunity to present reasons, either in person or in

writing, why the proposed action should not be taken." *Id*.; *see also Farhat v. Jopke*, 370 F.3d 580, 595-96 (6th Cir. 2004).

Defendants argue that Plaintiff's Complaint does not adequately raise any pre-termination due process theory.[5] (Defs.' Reply at 15).  The Court agrees.  In fact, there is not a single factual allegation in Plaintiff's Complaint regarding the extent to which Plaintiff was or was not afforded notice of the charges against her, or whether Plaintiff was or was not given the opportunity to respond to the charges prior to her termination.  Instead, there are only vague references in the Complaint to Plaintiff's "due process rights." (*See* Complaint ¶¶ 86, 88). "When a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume those facts do not exist." *Scheid*, 859F.2d at 437.  In the instant case, Plaintiff's vague, conclusory allegations of "due process rights," which amount to legal conclusions, do not satisfy the pleading requirements for a pre-deprivation procedural due process claim.

Regardless, as Defendants point out, even if such a claim had been sufficiently pled, and RSC had not complied with *Loudermill*, the individual Defendants would be entitled to qualified immunity. (Defs.' Reply at 16-17, n.13).  "[G]overnment officials performing discretionary functions are shielded from liability through 'qualified immunity' if they violate an individual's constitutional rights, but the violated right was not 'clearly established' at the time of the official's actions. *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007).  Though the Court declines to pass on whether Plaintiff's HRA 3 job duties placed her in the classified service, the

---

[5]Defendants have sought to introduce evidence in the form of exhibits to support their position that even if Plaintiff was classified, she did in fact receive adequate pre-deprivation process. (*See* Defs.' Reply at 15).  That evidence will not be considered at this stage in the litigation because the purpose of a Rule 12(c) motion for judgment on the pleadings it to test the sufficiency of the complaint.

Court acknowledges that Defendants have put forth valid arguments such that at a minimum, Plaintiff's entitlement to classified status (and consequent rights to pre-deprivation process) is debatable.[6] (*Id*.).

Plaintiff has also failed to state a post-deprivation procedural due process claim. Plaintiff has a post-deprivation remedy by way of an appeal to the State Personnel Board of Review ("SPBR"). *State ex rel. Weiss v. Industrial Comm'n*, 65 Ohio St.3d 470, 475 (1992) (when an employee appeals an adverse action, the SPBR has jurisdiction to determine its own jurisdiction, by deciding whether appellant's duties place her within the classified civil service). Plaintiff has exercised this remedy, and this remedy has been found adequate by the *Loudermill* Court. 470 U.S. at 546-47.

### 2. Alleged Deprivation to Rights of Appeal

Plaintiff cannot allege a deprivation of her right to appeal to the SPBR because she has filed an appeal, and that appeal is still pending. (Pl.'s Memo. in Opp. to Defs.' Mot. for Jdt. on

---

[6]Defendants argue:

> Here, at least three Ohio appellate courts have held that persons serving in positions such as Glasstetter's are unclassified by operation of O.R.C. § 124.11(A)(9). *Olander v. Ohio Environmental Protection Agency*, 134 Ohio App.3d 723, 732 N.E.2d 400 (Franklin 1999); *Robinson v. Ohio Dep't of Insurance*, No. 94APE07-1090, 1995 Ohio App. LEXIS 2177 (Franklin App. May 29, 1995); *Miller v. Ohio Dep't of Transportation*, No. 9-CA-84, 1984 Ohio App. LEXIS 11099 (Licking App. 1984). Glasstetter has cited no contrary decision.

(Defs.' Reply at 16-17, n.13).

Pldgs. at Ex. 2). The SPBR will ultimately determine whether Plaintiff was unlawfully discharged from a classified position.[7]

Accordingly, Plaintiff has failed to state a procedural due process claim with respect to her allegations that she was deprived of her rights to employment and appeal rights.

## IV.   DISPOSITION

For all of the foregoing reasons, the Court **GRANTS** Defendants' partial motion for judgment on the pleadings (Doc. 7), **DENIES as moot** Plaintiff's motion for partial summary judgment (Doc. 18), **DENIES as moot** Defendants' cross-motion for partial summary judgment (Doc. 22), and **DENIES as moot** Plaintiff's motion to defer briefing and ruling on the parties' cross motions for summary judgment (Doc. 26).

The Clerk shall remove Documents 7, 18, 22, and 26 from the Court's pending motions list.

**IT IS SO ORDERED.**

                                                      */s/ George C. Smith*
                                                      **GEORGE C. SMITH, JUDGE**
                                                      **UNITED STATES DISTRICT COURT**

---

[7] The appeal is currently stayed because Plaintiff chose to bring a fallback rights appeal before the SPBR even though the SPBR lacks jurisdiction to review fallback claims. (Pl.'s Memo. in Opp. to Defs.' Mot. for Jdt. on Pldgs. at Ex. 2).