UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EYDIE GLASSTETTER,**

        **Plaintiff,**

v.

**REHABILITATION SERVICES COMMISSION,** *et al.***,**

        **Defendants.**

Case No. 2:07-cv-125
**JUDGE SMITH**
**Magistrate Judge Deavers**

## OPINION AND ORDER

Plaintiff Eydie Glasstetter initiated this action against Defendants Rehabilitation Services Commission ("RSC"), John Connelly, and Kathryn Brown (collectively "Defendants"), alleging she was unlawfully discriminated against and eventually terminated on account of her race and in retaliation for engaging in protected activity.  Plaintiff asserted discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, claims under 42 U.S.C. § 1983 for denial of equal protection and due process, and supplemental claims under Ohio law.  In March 2008, this Court granted partial judgment on the pleadings in favor of Defendants (doc. 34), finding that Defendants were entitled to judgment on the pleadings on Plaintiff's § 1983 due process claim.  This action is currently before the Court on Defendants motion for summary judgment as to the remaining claims in this matter.  In the alternative, the individual Defendants move for qualified immunity.  Defendants' pending motion for summary judgment has been fully briefed and is now ripe for disposition.  For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment.

I.     **BACKGROUND**

Plaintiff Glasstetter, a Caucasian female, began her employment with the State of Ohio in 1992, as a Human Resource Administrator ("HRA") 2, then as an HRA 3, for the Department of Commerce. Both of these positions were designated as "unclassified." On October 10, 1998, Plaintiff transferred to Defendant RSC and served in the position of HRA 3 until she was terminated effective August 21, 2006. When the HRA 3 position was posted, it was described as "classified." As an HRA 3 with the RSC, Plaintiff was responsible for giving advice to provisional, certified, classified, and unclassified employees at the RSC concerning applicable civil service laws, rules, policies, and procedures.

Defendant Connelly is the administrator of the RSC and the appointing authority for all employees of RSC. At Plaintiff's deposition, she described her relationship with Connelly during her tenure at the RSC as "strained," that Connelly treated her with "total disrespect," and focused on her mistakes. (Glasstetter Dep. 147-48). On April 3, 2006, Connelly told Plaintiff that he wanted to "unclassify" Plaintiff's job. Defendants Connelly and Brown, the assistant administrator at RSC, informed Plaintiff that they wanted "consistency" at RSC, and for that reason it was necessary to change Plaintiff's civil service status from classified to unclassified. (Glasstetter Aff. ¶ 18). Defendant Brown told Plaintiff that the request was not the result of a performance issue. Connelly allegedly offered to Plaintiff a choice regarding her status. She could either remain classified, and then the individual Defendants would hire another employee, who would assume the same responsibilities and duties as Plaintiff but would be Plaintiff's supervisor; or, Plaintiff could agree to become unclassified, and in that scenario they would not hire an additional person to supervise her.

Plaintiff objected to the new designation, stating that the requested change was contrary

to established RSC policy and practice. Plaintiff complained that RSC's African-American General Counsel, Darla Burns, whose duties included providing legal advice to the Commission and high level managers, was not asked to change her classification, even though she was on the same organizational level as Plaintiff and they both supervised an unclassified employee. Plaintiff asked whether the differing treatment was because Plaintiff is white and Burns is black, and Brown responded by stating, "Don't back me into a corner." (Glasstetter Aff. ¶ 19). Brown also indicated that Connelly "should be able to hire his own HR person," and that he should be able to restructure the RSC as he desired. *Id.* at ¶ 22.

Although Connelly regarded Burns' position as unclassified, he did not seek to change her designation when he sought the change in Plaintiff's designation because he was aware that Burns planned to retire in the near future. After Burns retired, the General Counsel position was redesignated as unclassified. Furthermore, when Defendants Brown and Connelly asked Plaintiff to redesignate her status, and Plaintiff raised the issue of Burns not having her status changed, Connelly did not regard this assertion by Plaintiff as raising any plausible claim of reverse race discrimination.

Sometime before May 17, 2006, Plaintiff met with RSC Assistant General Counsel Kim Hudak to discuss Plaintiff's intent to file a charge with the Equal Employment Opportunity Commission ("EEOC") against Defendants Connelly and Brown. According to Plaintiff, when she informed Hudak that her position was going to be unclassified, even though Burns' position would remain classified, Hudak said that was discrimination. Plaintiff also asserts that Defendant Brown told her that she "should not have talked to Kim Hudak about filing an EEO charge." (Glasstetter Dep. 123).

Plaintiff asserts that she ultimately agreed to the new designation because she believed she would have the right to "fall back" to a classified position, and that this belief was confirmed by Connelly. Plaintiff nonetheless indicated that she would refuse to change her classification unless the order so directing was in writing. The next day, Plaintiff received an order in writing from Connelly directing her to prepare and process the necessary paperwork to effectuate the redesignation, including a statement from her indicating her willingness to redesignate her position to the unclassified service. In response, Plaintiff signed an "Unclassified Service Acknowledgment Form," which stated:

> I hereby accept the redesignation of my position of Human Resource Administrator 3. I understand that the position, effective 5-29-06, has been designated as unclassified by the Rehabilitation Services Commission. I acknowledge that the position is in the unclassified civil service of the State of Ohio pursuant to Ohio Revised Code section 124.11(A)(9). I further understand that I may be entitled to "fall-back" rights under Ohio Revised Code section 124.11(D).

A few days after Plaintiff was redesignated as an unclassified employee, Connelly requested that she be investigated by Elizabeth Murch, an attorney employed by the Ohio Department of Rehabilitation and Correction. This investigation was initiated after Lynn McNabb, the Performance Management Manager and Plaintiff's subordinate, alleged that Plaintiff had engaged in incompetent, dishonest, and retaliatory behavior toward McNabb. Plaintiff was notified that she was the target of a disciplinary investigation regarding her conduct at RSC. Through her attorney, Plaintiff advised Connelly that she was exercising "her fallback rights to resume the same classified position and status held immediately prior to her forced appointment to the unclassified service." (Glasstetter Aff., Ex. 10).

Based on her investigation, Murch determined that the evidence indicated that Plaintiff exhibited retaliatory behavior toward McNabb as a result of McNabb complaining about Plaintiff

to Defendant Brown.  Murch found that Plaintiff retaliated against McNabb by revoking her permission to work at home and "flex" her schedule, and that Plaintiff acted in a duplicitous manner by encouraging McNabb to file a job audit request and then advising Defendant Connelly that the request was meritless.  In addition, Murch found that Plaintiff acted inappropriately by not being truthful during the investigation.  Murch submitted her investigative report to Connelly in August 2006.

Subsequently, Connelly notified Plaintiff that based on the investigative report, he was considering terminating her from employment with the RSC.  Connelly provided to Plaintiff a copy of the investigative report and the opportunity to submit, within six days, any statement or documentation in opposition to her termination.  Plaintiff submitted a statement generally denying any wrongdoing or that the RSC had just cause for her removal.  On August 15, 2006, Plaintiff was placed on administrative leave, and on August 21, 2006, she was terminated from employment with the RSC.  Plaintiff was replaced by Joy Kouns, an Asian-American.

Plaintiff appealed her termination to the State Personnel Board of Review ("SPBR"), asserting that she was a classified employee at the time of her discharge.  Defendants moved to dismiss her appeal, claiming that Plaintiff was an unclassified employee.  One of the issues presented in the appeal to the SPBR was whether Plaintiff had been denied her "fallback" rights.  The SPBR determined that it lacked jurisdiction to review Plaintiff's claim that she had been denied her fallback rights.  Accordingly, the SPBR stayed Plaintiff's appeal to allow the issue to be resolved through a mandamus action.  In January 2008, Plaintiff filed a complaint in the Franklin County Court of Appeals seeking a writ of mandamus to compel the RSC and Connelly to honor her fallback rights under Ohio Rev. Code § 124.11(D), and to reinstate her to the

position of HRA 3 in the classified service effective June 2006. The court of appeals denied the writ, finding *inter alia* that Plaintiff had no fallback rights under Ohio Rev. Code § 124.11(D). *State ex rel. Glasstetter v. Connelly*, 901 N.E.2d 265 (Ohio Ct. App. 2008). The Supreme Court of Ohio affirmed the decision of the court of appeals. *State ex rel. Glasstetter v. Connelly*, 912 N.E.2d 89 (Ohio 2009).

After filing a charge of discrimination with the EEOC, and receiving a "right to sue letter," Plaintiff timely filed her complaint in the instant action (doc. 2). In her complaint, Plaintiff claims that Defendants violated the Due Process Clause of the Fourteenth Amendment as actionable through 42 U.S.C. § 1983 by depriving her of specific property interests. Additionally, the complaint alleges that Defendants discriminated against Plaintiff because of her Caucasian race in violation of Title VII and the Equal Protection Clause as actionable through 42 U.S.C. § 1983. Plaintiff also asserts that Defendants violated Title VII by discharging her in retaliation for her complaints of race discrimination. Lastly, Plaintiff asserts discrimination in violation of Ohio law. Plaintiff's § 1983 due process claim was dismissed by this court in March 2008. But Plaintiff's Title VII, § 1983 equal protection, and Ohio law claims remain pending. By their motion for summary judgment that is ripe for disposition, Defendants seek the dismissal of all remaining claims.

II.     **SUMMARY JUDGMENT STANDARD**

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(c)(2), which provides as follows: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and

---

[1] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

*Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

III. **DISCUSSION**

Plaintiff alleges that she was the victim of employment discrimination in violation of Title VII of the Civil Rights Act of 1964, the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, and Ohio Revised Code Chapter 4112. The Court will first analyze Plaintiff's Title VII and § 1983 disparate treatment claims. Next, the Court will

address Plaintiff's Title VII retaliation claim. Finally, the Court will address Plaintiff's discrimination claims that are based on Ohio law.

      A.      Title VII and § 1983 Disparate Treatment Claims

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(A)(1). Furthermore, 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws," which includes a person's right to be free from racial discrimination pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

To prevail in an employment discrimination disparate treatment claim, a plaintiff must either present direct evidence of discrimination or rely upon the burden-shifting scheme set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-03 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), to create an inference of discrimination. *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 402 (6th Cir.1999). Plaintiff does not suggest the existence of direct evidence of race discrimination – she presents her claims under the *McDonnell Douglas* burden-shifting paradigm.

To establish a *prima facie* case of employment discrimination based on race, a plaintiff must present circumstantial evidence demonstrating the following elements: (1) that the plaintiff is a member of a protected class (such as a racial minority); (2) that the plaintiff was qualified for the position; (3) that the defendant subjected the plaintiff to an adverse employment action; and (4) that the plaintiff was replaced by a person outside the protected class or that the defendant

9

did not subject similarly situated persons outside the protected class to such adverse action. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *McDonnell Douglas Corp.*, 411 U.S. at 802; *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995). The Sixth Circuit Court of Appeals has applied a modified version of this test to cases in which a member of the majority is claiming discrimination. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

In cases of "reverse" race discrimination, where, as here, the plaintiff is not a member of a racial minority, the Sixth Circuit Court of Appeals has held that, in order to establish the first prong of the test, the plaintiff must demonstrate "'background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719-20 (6th Cir. 2006) (quoting *Zambetti v. Cuyahoga Cmty. College*, 314 F.3d 249, 255 (6th Cir. 2002)); *Sutherland*, 344 F.3d at 614. To establish such background circumstances, the plaintiff can present "evidence of [defendants'] unlawful consideration of race as a factor in hiring in the past [to] justif[y] a suspicion that incidents of capricious discrimination against whites because of their race may be likely." *Zambetti*, 314 F.3d at 256. Alternatively, a plaintiff can demonstrate background circumstances by showing simply that the employer was a member of the same minority race as the employees he was promoting. *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 340 n.11 (6th Cir. 2009) (citing *Zambetti*, 314 F.3d at 257 (relying on the single factor that the police chief was African-American and was promoting African-Americans)). Furthermore, to satisfy the fourth prong in a reverse discrimination case, the plaintiff must show that the defendant treated minority employees who were similarly situated to the plaintiff more favorable

than she was treated. *Sutherland*, 344 F.3d at 614.

If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for the adverse action against the plaintiff. *See id.*; *Burdine*, 450 U.S. at 252-53. If the defendant comes forward with a legitimate, nondiscriminatory reason for its actions, then the burden returns to the plaintiff to prove that the defendant's proffered reason is a mere pretext for discrimination. *See id.*; *Burdine*, 450 U.S. at 253. "The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253. This burden-shifting framework is intended to be flexible in differing factual circumstances. *See e.g.*, *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 869-70 (6th Cir. 2001), citing *Burdine*, 450 U.S. at 254 n.6.

Defendants argue that Plaintiff's discrimination claims must be dismissed because Plaintiff has failed to establish a *prima facie* case of discrimination. Defendants argue that Plaintiff did not suffer an adverse employment action, was neither replaced by someone outside the protected class nor treated differently than a similarly situated member, and cannot show background circumstances suggesting that RSC discriminates against Caucasians. Defendants do not assert that Plaintiff was not qualified for her position.

Plaintiff has pointed to two separate actions of her employer as constituting an adverse employment action. First, Plaintiff contends that she was subject to an adverse employment action when the designation of her position was changed from classified to unclassified. Ohio Rev. Code § 124.11 divides Ohio public employment into the classified and unclassified service.

11

Whether an employee is unclassified pursuant to Ohio Rev. Code § 124.11(A) is determined by the employee's actual job duties, not by the employer's designation of the employee's status. *See Yarosh v. Becane*, 406 N.E.2d 1355, para. 2 of syllabus (1980) ("The State Personnel Board of Review has jurisdiction over appeals from removals of public employees if it determines that such employees are in the classified service, regardless of how they have been designated by their appointing authorities."). Thus, classification status is determined by the statutory definition contained at Ohio Rev. Code § 124.11, and not how the parties list or designate the position. As this Court already has noted, to find otherwise could result in tenure being irrevocably awarded to personal or political favorites by the mere act of designating a high-ranking fiduciary or policy-making position as "classified." (Doc. 34.)

Plaintiff was instructed by Defendant Connelly to redesignate her status from classified to unclassified. This designation by her appointing authority simply reflected the view of the appointing authority as to her status; it did not change her rights under Ohio law. There is no property right in an appointing authority's designation of a position as classified. *Id.* Because Plaintiff had no property right in the designation of her position, the redesignation of the position did not affect any property right. Therefore, the change in designation of Plaintiff's position was not a materially adverse employment action.

Plaintiff alleges that her termination from employment was an adverse employment action that allegedly resulted from racial discrimination. Clearly, Plaintiff did suffer a materially adverse employment action when she was terminated in August 2006 from her position of employment. Additionally, evidence indicates that Plaintiff was qualified for the position and was replaced by a non-Caucasian. But Plaintiff has presented no evidence of background

12

circumstances reasonably indicating that race was a consideration in past employment decisions by Plaintiff's employer such as would raise the reasonable inference that her employer discriminates against the majority race. In this regard, Plaintiff argues that there was a pattern at RSC of giving non-Caucasians preferential treatment, as demonstrated by RSC's treatment of Tanya Partridge, Quinn Carter, and Sandra Spann. Plaintiff asserts that Partridge was not terminated despite discrepancies in her time sheets, that Carter was not terminated for sending sexually explicit emails, and that Spann was only demoted for her performance issues. Plaintiff opines that these non-Caucasian employees should have been more severely disciplined. But Plaintiff has presented no evidence that comparably situated Caucasians were less-favorably treated than these individuals. And Plaintiff's opinion, based on her general perception, does not provide the necessary evidence to show that RSC decision-makers discriminated against Caucasians. Plaintiff's subjective views in relation to other coworkers, without more, are insufficient to establish discrimination. *Cf. Briggs v. Potter*, 463 F.3d 507, 516-17 (6th Cir. 2006) (holding that a plaintiff's subjective views of his qualifications in relationship to other applicants, without more, fails to establish discrimination).

Even if Plaintiff could set forth a *prima facie* case with respect to her claim for disparate treatment based upon the redesignation of her position or her termination from employment, Defendants would still be entitled to judgment on this claim because Plaintiff has not met her burden to demonstrate that Defendants' legitimate proffered reasons for these actions were mere pretext for reverse race discrimination.

"An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to

13

discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998). "In challenging an employer's action, an employee 'must demonstrate that the employer's reasons (each of them, if the reasons independently caused [the] employer to take the action it did) are not true.' " *Id.* (quoting *Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 676 (7th Cir. 1997)). In examining whether the stated reason is pretext, the Court must determine whether the employer reasonably relied on the particularized facts before it at the time it made the employment decision. *Smith*, 155 F.3d at 807. The employer is not required to show that it left no stone unturned; rather, the issue is whether the employer made a reasonably informed and considered decision before taking the adverse employment action. *Id.*

"Where the employer can demonstrate an honest belief in its proffered reason, the inference of pretext is not warranted." *Weimer v. Honda of America Mfg., Inc.*, 356 F. App'x 812, 817 (6th Cir. 2009), citing *Smith*, 155 F.3d at 806. This is the "honest belief rule." "Under the honest belief rule, an employer's proffered reason is considered honestly held where the employer can establish it 'reasonably reli[ed] on particularized facts that were before it at the time the decision was made.' " *Joostberns v. United Parcel Services, Inc.*, 166 F. App'x 783, 791 (6th Cir. Jan. 9, 2006) (citing *Smith*, 155 F.3d at 806-07; *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)). But if the employee adduces evidence establishing that the employer failed to make a reasonably informed and considered decision, then its decisional process is "unworthy of credence," and any reliance by the employer on such a process cannot be deemed "honestly held." *Smith*, 155 F.3d at 807-08.

Defendant Connelly has testified that he decided to change the description of Plaintiff's status, as documented in the personnel records, from classified to unclassified because, in his

14

view, Plaintiff's job duties placed her in the unclassified service pursuant to Ohio Rev. Code § 124.11(A), all other RSC bureau directors' and team leaders' positions were designated as unclassified, and Plaintiff would be more responsive to his directions if she understood that she was an "at will" employee. (Connelly Supp. Aff. ¶ 2). Defendant Connelly did not immediately seek a change in the designation of Burns' position because he understood that she was close to retirement. Plaintiff has presented no evidence showing that the reasons stated for the redesignation were insufficient to motivate, or did not actually motivate, the action taken.

Similarly, Plaintiff does not show that the reason for her termination from employment was a pretext for reverse race discrimination. According to Defendant Connelly's affidavit, Plaintiff was terminated on the basis of the findings made in Murch's investigative report. These findings indicated that Plaintiff exhibited retaliatory behavior toward McNabb as a result of McNabb complaining about Plaintiff, that Plaintiff acted in a duplicitous manner by encouraging McNabb to file a job audit request and then advising Defendant Connelly that the request was meritless, and that Plaintiff acted inappropriately by not being truthful during the investigation of her actions. Thus, Defendants have demonstrated that Defendant Connelly, in discharging Plaintiff, reasonably relied on Welch's investigative report outlining Plaintiff's improper conduct.

Conversely, Plaintiff has not presented any evidence disputing the reasonableness of Defendant Connelly's reliance on Welch's report. Plaintiff argues that Defendant Connelly's affidavit testimony indicating that he relied on the investigative report is not credible because Connelly allegedly had told her that she had fallback rights and because Governor Strickland also decided to limit the ability of state employees to flex their schedules. Plaintiff's argument is

15

unpersuasive. The fact that Governor Strickland, in 2008, decided to limit the ability of state employees to flex their schedules for customer service reasons does not negate the findings contained in Murch's report as to Plaintiff's motivation for limiting McNabb's ability, in 2006, to work at home or flex her schedule. Moreover, evidence of Connelly's alleged statement to Plaintiff that she had fallback rights does not create a genuine issue of fact as to the reasonableness of Connelly's reliance on Murch's report; that is, such evidence does not discredit the proffered basis of Plaintiff's termination.

Because the employer has demonstrated an honest belief in the proffered reason for the discharge, and because Plaintiff has not adduced evidence undermining the credence of her employer's decisional process, an inference of pretext in this case is not warranted.

Therefore, even if Plaintiff has established a *prima facie* case of discrimination, the Court finds that Plaintiff has failed to demonstrate pretext, and consequently, Defendants are entitled to judgment on Plaintiff's Title VII and § 1983 disparate treatment claims. Because Defendants are entitled to summary judgment on all of these claims, the Court does not find it necessary to address Defendants' qualified immunity argument.

      B.      Title VII Retaliation Claim

Title VII prohibits an employer from retaliating against an employee who opposed a violation of Title VII, or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII retaliation claims are analyzed under a variation of the burden-shifting framework set forth in *McDonnell Douglas*. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000) (citation omitted). In order to establish a *prima*

*facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) the defendant knew of this exercise of her protected rights; (3) the defendant consequently took an action that was "materially adverse" to the plaintiff; and (4) there is a causal connection between the protected activity and the materially adverse action. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003); *see also Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (modifying the third element to require a "materially adverse action" rather than an "adverse employment action").

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to come forward with a legitimate, nondiscriminatory and nonretaliatory reason for the adverse action against the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993); *Burdine*, 450 U.S. at 252-53. If the defendant comes forward with a legitimate, nondiscriminatory and nonretaliatory reason for its actions, then the burden shifts to the plaintiff to prove that the defendant's proffered reason is a mere pretext for discrimination or retaliation. *Hicks*, 509 U.S. at 512, n.4; *Burdine*, 450 U.S. at 253. As in the disparate treatment claim context, "[t]he nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [or retaliated] against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

Defendants argue that Plaintiff's retaliation claim fails on the first and fourth prongs of her *prima facie* case, and by her inability to show pretext. As to the first prong of the *prima facie* case, Defendants argue that Plaintiff did not engage in protected activity because she could not have reasonably believed she was complaining about a violation of Title VII. For the

17

purpose of a retaliation claim under Title VII, "protected activity" refers to opposing any practice made unlawful under Title VII, or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII.  *See* 42 U.S.C. § 2000e-3(a).  "A person opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful."  *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312-13 (6th Cir. 1989).  That belief must be objectively reasonable as well.  *See Clark City School Dist. v. Breeden*, 532 U.S. 268, 271 (2001).

Plaintiff initially opposed Defendant Connelly's instruction to redesignate her status from classified to unclassified.  She also allegedly consulted with RSC attorney Hudak regarding the possible filing of an EEOC claim due to the redesignation of her classification status.  Plaintiff questioned her redesignation in view of the decision by Defendant Connelly not to redesignate Darla Burns.  Plaintiff viewed this as discriminatory.  But Plaintiff could not have reasonably believed that the redesignation request violated Title VII's prohibition against action taken on the basis of race that alters the employee's compensation, terms, conditions, or privileges of employment.  Pursuant to Ohio Rev. Code § 124.11, whether an employee is classified or unclassified is determined by the employee's actual job duties, not by the employer's designation of the employee's status contained in a personnel record.  Hence, the redesignation of Plaintiff's position altered her classification on paper, but did not change her actual job duties.  And Plaintiff was a human resource administrator with the State of Ohio from 1992 until 2006.  One of her responsibilities during her employment was to provide advice to others regarding applicable civil service laws, rules, policies, and procedures.  Thus, it would not have been

reasonable for Plaintiff to believe that an employee's classification status was controlled by how it was administratively designated, and not by his or her actual job duties. Correspondingly, it would not have been reasonable for Plaintiff to believe that she had been treated differently from Darla Burns in any material or significant way. Therefore, Plaintiff has failed to establish the first element of her retaliation claim. Consequently, it is unnecessary to analyze the issue of whether there was a causal connection between protected activity and a materially adverse action.

For these reasons, Plaintiff has failed to establish a *prima facie* case of retaliation. Moreover, even if Plaintiff has established a *prima facie* case of retaliation, she cannot demonstrate that Defendant's asserted reliance on Murch's investigation was a pretext for retaliation, as she has presented no evidence undermining the credence of Defendants' asserted decisional process concerning her discharge. Consequently, Defendants are entitled to judgment as a matter of law on Plaintiff's Title VII retaliation claim.

    C.    Ohio Law Claims

Defendants contend that Plaintiff's Ohio law claims against the State of Ohio are barred in this Court by sovereign immunity as embedded in the Eleventh Amendment. The Court agrees.

The Sixth Circuit has repeatedly and consistently held that the State of Ohio has not consented to be sued for state law claims in federal court. Rather, Ohio has consented to be sued in only one forum—the Ohio Court of Claims. *See Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 825 F.2d 946, 954 (6th Cir. 1987) (en banc), *cert. denied*, 487 U.S. 1204 (1988); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir.

1982). "[T]he fact that the state has waived immunity from suit in its own courts is not a waiver of Eleventh Amendment immunity in the federal courts." *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985), *cert. denied*, 474 U.S. 824 (1985), citing *Edelman v. Jordan*, 415 U.S. 651, 677 n.19 (1974).

Accordingly, Plaintiff's state law claims against the RSC, an agency of the State of Ohio, are dismissed without prejudice.

Defendants also argue that Plaintiff's Ohio law claims against the individual Defendants are barred by Ohio Rev. Code § 9.86. Again, the Court agrees. The language of Ohio Rev. Code § 9.86 states that the Court of Claims of Ohio must first determine that individual immunity had been forfeited pursuant to Ohio Rev. Code § 2743. *See e.g.*, *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989).

Accordingly, Plaintiff's state law claims against Defendants Connelly and Brown are dismissed without prejudice.

IV. **CONCLUSION**

For the foregoing reasons, the court **GRANTS** Defendants' motion for summary judgment (doc. 47). Consistent with the foregoing, all of Plaintiff's remaining federal claims against Defendants are dismissed with prejudice, and Plaintiff's claims against Defendants based on Ohio law are dismissed without prejudice.

The Clerk shall remove Document 47 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

                                          **s/ *George C. Smith***
                                          **GEORGE C. SMITH, JUDGE**
                                          **UNITED STATES DISTRICT COURT**